# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1564
_____

Chad Grady,                                   *
                                              *
            Appellee,                         *   Appeal from the United States
                                              *   District Court for the
      v.                                      *   Northern District of Iowa
                                              *
United States of America,                     *   [TO BE PUBLISHED]
                                              *
            Appellant.                        *

_____

Submitted:  October 2, 2001
Filed: October 15, 2001
_____

Before BOWMAN, HEANEY, and BYE, Circuit Judges.
_____

BYE, Circuit Judge.

When a material dispute of fact prevents a district court from entering summary judgment on an affirmative defense raised by the government in a 28 U.S.C. § 2255 proceeding, the court must conduct an evidentiary hearing to resolve the dispute. In the present case, the district court neglected to resolve whether Chad Grady's § 2255 motion was timely filed, yet the court later granted relief, concluding that Grady's constitutional rights were violated when he appeared for two hours before a jury venire panel in jail clothes. On appeal, the government contests both the timeliness of Grady's § 2255 motion and the jail-clothes ruling. We reverse and remand for an evidentiary hearing to determine whether Grady's motion was timely filed.

I

In February 1992, Grady was convicted of possessing with intent to distribute, and conspiring to possess and distribute, crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and 846. The district court sentenced Grady to serve 151 months in prison, and we affirmed the judgment of the district court. United States v. Grady, 997 F.2d 421 (8th Cir. 1993).

In early 1997, Grady learned from his former attorney that the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) had imposed a one-year statute of limitations on § 2255 motions, and that federal prisoners whose convictions became final before AEDPA's effective date (April 24, 1996) would receive a one-year grace period in which to file § 2255 motions. This meant that Grady had until April 24, 1997 to file his own § 2255 motion.

While incarcerated at the El Reno federal prison in Oklahoma, Grady completed a § 2255 motion on a preprinted form provided by the Clerk of the United States District Court for the Northern District of Iowa. Grady detailed several purported constitutional infirmities in his trial, signed the motion, and typed the date, "April 22, 1997." The Clerk received and filed Grady's motion on May 13, 1997, which exceeded the April 24, 1997 filing deadline by 19 days. The envelope containing Grady's motion bore a May 9, 1997 postmark, but the envelope contained no additional markings or prison stamps.

The government moved to dismiss Grady's § 2255 motion as untimely. The district court appointed counsel to represent Grady, and he opposed the government's motion. Grady filed a sworn affidavit, dated October 7, 1998, stating that he had deposited his § 2255 motion for mailing in the "special mail" system at El Reno on April 22, 1997. Grady also indicated that he had provided prison officials with the proper amount of prepaid postage.

The government argued that Grady's affidavit should not be credited because it was impossible for a piece of prisoner mail to languish for 17 days (from April 22 until May 9, when the United States Postal Service postmarked Grady's envelope) in the prison mail room. The government filed its own affidavit from Michael Malone, who operates the El Reno mail room. Malone asserted that Bureau of Prisons guidelines require mail room workers to forward all prison mail to the Postal Service within 24 hours, absent unforeseen circumstances. In addition, Malone noted that Grady claimed to have deposited his § 2255 motion in the prison's "special mail" system, which El Reno prisoners are advised to use for legal filings and correspondence. Mail room workers must stamp every item deposited in the "special mail" system with the date received on the outside of the envelope. Malone thus inferred that Grady could not have placed his § 2255 motion in the "special mail" system because Grady's envelope did not contain a date stamp.

The district court accepted the parties' competing affidavits and converted the government's motion to dismiss, Fed. R. Civ. P. 12(b)(6), into a motion for summary judgment, Fed. R. Civ. P. 56(c). The court noted the factual dispute engendered by the Grady and Malone affidavits and ruled that the dispute prevented the entry of summary judgment. The court found Grady's affidavit sufficiently credible to create a material dispute of fact because a recent Tenth Circuit decision had criticized the handling of prisoner mail at El Reno. See United States v. Gray, 182 F.3d 762, 765-66 (10th Cir. 1999). The district court did not hold an evidentiary hearing to accept testimony and resolve the factual conflict, and the court never ruled on the timeliness of Grady's § 2255 motion during subsequent proceedings.

The district court later ruled that Grady had been forced to wear jail clothes in front of the jury venire panel in violation of his constitutional rights. The court granted Grady's § 2255 motion, and the government instituted this timely appeal.

II

The government contends that the district court erred in granting Grady's § 2255 motion because it was not filed within the one-year grace period. The government's contention is persuasive at first blush. Grady had to file his motion by April 24, 1997 to comply with § 2255's limitations period. Moore v. United States, 173 F.3d 1131, 1133-35 (8th Cir. 1999). The Clerk received and filed Grady's § 2255 motion on May 13, 1997. Hence Grady's motion was untimely unless an exception to the filing rules altered the deadline in his favor. Grady argues that one such exception—the prison mailbox rule—applies to his case.

A

In its original form, the prison mailbox rule deemed a *pro se* prisoner's notice of appeal "filed" at the moment he delivered it to the warden for forwarding to the clerk of the district court. Houston v. Lack, 487 U.S. 266, 270-76 (1988). The Court's holding in Houston was later incorporated into Rule 4 of the Federal Rules of Appellate Procedure, which governs the timeliness of notices of appeal. See Fed. R. App. P. 4(c). Though Rule 4(c) applies only to notices of appeal, the prison mailbox rule has been applied to *pro se* prisoner filings outside the appellate sphere.

We have extended the benefits of the prison mailbox rule to state prisoners who petition for writs of habeas corpus, Nichols v. Bowersox, 172 F.3d 1068, 1077 (8th Cir. 1999) (en banc), and to federal prisoners who move for similar relief under § 2255, Moore, 173 F.3d at 1135. While gradually expanding the scope of the prison mailbox rule, we have sought to maintain a uniform construction of the rule irrespective of context. Thus, we have closely hewed to the requirements of Rule 4(c) in determining whether a prisoner may benefit from the prison mailbox rule. See Nichols, 172 F.3d at 1077 n.5 ("For the sake of consistency, we adopt the same requirements for [a habeas petition] by a *pro se* inmate as applies to notices of appeal

pursuant to Rule 4(c)(1) of the Federal Rules of Appellate Procedure."). Under our jurisprudence, then, a prisoner seeking to benefit from the prison mailbox rule must satisfy the requirements of Rule 4(c) whether he files a notice of appeal, a habeas petition, or a § 2255 motion.

B

Applying these principles to the present case, it is apparent that Grady had to comply with Rule 4(c) in filing his § 2255 motion in order to benefit from the prison mailbox rule. He bears the ultimate burden of proving his entitlement to benefit from the rule. Porchia v. Norris, 251 F.3d 1196, 1198 (8th Cir. 2001).

The parties dispute the precise requirements of Rule 4(c), so we must begin our analysis by deducing those requirements. We do not focus on the current version of the prison mailbox rule in Rule 4(c)(1), however, because Congress amended and reorganized that Rule after Grady filed his § 2255 motion.[1] Instead, we turn our attention to the earlier version of Rule 4(c).

The former version of Rule 4(c) provided, in pertinent part, that

> [i]f an inmate confined in an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a notarized statement or by a declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid.

Fed. R. App. P. 4(c), amended by 28 U.S.C. App. (1994 & Supp. IV 1998).

---

[1]In 1998, Congress amended Rule 4 to require a prisoner to deposit his filing in the prison's legal mailing system if the prison maintained one.

The government argues that Rule 4(c) required a prisoner to file a "notarized statement" or "declaration" along with his legal papers. The government posits that Grady did not comply with Rule 4(c) because he did not attach to his § 2255 motion the required declaration attesting to the date of deposit with proper postage. We disagree with the government's construction of Rule 4(c).

Rule 4(c) specifies two methods by which a prisoner may demonstrate timely filing, and we have indicated that the Rule requires a prisoner to choose one of those methods. Porchia, 251 F.3d at 1198 ("Porchia was required to file an affidavit or notarized statement recounting the precise date upon which he left his notice of appeal with prison authorities."). But the Rule does not specify *when* a prisoner must file an affidavit or notarized statement. The literal terms of the Rule do not require a prisoner to accompany his motion with proof of timely filing and proper postage. The Rule mandates only that a prisoner submit such proof. While it might be sensible to require prisoners to file their affidavits at the same time they file their motions or notices of appeal, it would be imprudent for a court to graft this new requirement onto Rule 4(c), which bears Congress's imprimatur. We therefore reject the government's position that a prisoner's declaration or statement must accompany his legal filing.

Our view finds substantial support in the historical roots of Rule 4(c). "Soon after the Houston decision the Supreme Court amended its own rules to incorporate the result it had reached in that case." Charles Alan Wright et al., 16A Federal Practice & Procedure § 3950.12 (3d ed. 1999). The Court enacted what is now codified as Supreme Court Rule 29.2:

> If submitted by an inmate confined in an institution, a document is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing and is accompanied by a notarized statement or declaration in compliance with 28 U.S.C. § 1746 setting out the date of deposit and stating that first-class postage has been prepaid.

Rule 29.2 explicitly requires the notarized statement or declaration to accompany a prisoner's legal filing. See Robert L. Stern et al., Supreme Court Practice 277 (7th ed. 1993) ("The prisoner should prepare such an affidavit or statement in every such instance, *to be mailed simultaneously with the petition* in the same or a separate envelope.") (emphasis added).

Rule 4(c) descends from Supreme Court Rule 29.2. In 1993, the Judicial Conference's Advisory Committee on Appellate Rules suggested amending Rule 4 to incorporate the prison mailbox rule. The Advisory Committee turned to Rule 29.2 for guidance and eventually adopted most of its language, with one notable exception. The Committee explicitly rejected Rule 29.2's requirement that a prisoner's affidavit accompany his notice of appeal. See Minutes of April 17, 1991 Meeting 26 ("Judge Logan suggested omitting the requirement that a notice of appeal be accompanied by a statement concerning the date of deposit of the notice in the institutional mailing system. . . . Judge Boggs seconded the motion and it carried five to two."). Congress accepted the Advisory Committee's suggestion. As amended, Rule 4(c) establishes a prison mailbox rule and requires prisoners to deposit their papers with prison authorities by pertinent due dates in order to benefit from the rule. Unlike Supreme Court Rule 29.2, however, Rule 4(c) does not require a prisoner to file an affidavit accompanying, or attached to, his motion or notice of appeal.

By determining that a prisoner's affidavit need not accompany his legal filing, we do not suggest that a prisoner may needlessly delay proceedings without penalty. In the appropriate case, a district court may refuse to consider a prisoner's Rule 4(c) affidavit due to a lengthy and unwarranted delay in submission. Or, if a court elects to consider a prisoner's greatly-delayed affidavit, the court may well decide that it deserves less weight than other evidence in the record. An affidavit filed long after the events in question have occurred tends to be less trustworthy than a promptly-recorded statement because the passage of time dulls memories. The parties have not discussed these matters in their briefs, and so we leave open the possibility on remand

that the district court may, in its discretion, refuse to consider Grady's affidavit, or, upon considering it, afford it less weight than other evidence of record because Grady filed it 18 months after posting his § 2255 motion.

C

We have discerned that the prison mailbox rule, as codified in Rule 4(c) when Grady filed his § 2255 motion, consisted of two requirements. A prisoner must have actually deposited his legal papers with the warden by the last day for filing with the clerk. And the prisoner must at some point attest to that fact in an affidavit or notarized statement. We must now examine whether Grady proved he complied with these dual requirements.

Grady's affidavit stated that he had placed his § 2255 motion in the prison's "special mail" system on April 22, 1997 with appropriate postage prepaid. The government replied by producing evidence (the Malone affidavit) suggesting Grady could not have deposited his motion with prison authorities on that date. Malone claimed that mail room workers at El Reno routinely direct prisoner mail to the Postal Service within a matter of days. Moreover, because the envelope containing Grady's motion bore no stamp indicating its "special mail" status, the government argued that the factual allegations in Grady's affidavit were not worthy of credence.

The district court considered the parties' submissions and determined that a material dispute of fact between the parties prevented the entry of summary judgment in favor of the government. We agree with the court's decision, but not with the court's next step. After denying the government's summary judgment motion, the district court should have resolved the factual dispute by conducting an evidentiary hearing, receiving evidence (including testimony), and issuing findings. An untimely § 2255 motion presents the government with an affirmative defense that precludes a court from granting relief on the merits of the claims. Thus, the court was obliged to

-8-

determine the timeliness of Grady's motion before delving into the merits of his constitutional claims. Just as a district court may not *deny* a prisoner § 2255 relief without holding an evidentiary hearing to resolve disputed questions of fact, Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir.) ("An evidentiary hearing on a § 2255 motion must be granted unless the motion, files and records of the case establish conclusively that the petitioner is not entitled to relief."), cert. denied, 531 U.S. 829 (2000), a court may not *grant* a prisoner § 2255 relief without resolving outstanding factual disputes against the government. In this instance, the district court plainly erred by neglecting to resolve a factual dispute regarding the timeliness of Grady's § 2255 motion before considering its claims for relief.

III

Whether Grady's motion was timely filed presents a question of fact, which, in this case, the district court did not decide. We cannot ascertain from the record whether Grady's motion was timely filed, and we are without authority to find the facts ourselves. We therefore remand the matter to the district court for further proceedings consistent with our opinion. See Porchia, 251 F.3d at 1199 ("We acknowledge that remand may be appropriate in the rare case in which the prisoner and the warden present conflicting proof of timeliness, or when other complicated circumstances exist.").

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-